UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRELLEBORG AUTOMOTIVE USA, INC.,

    Plaintiff,

v.                                                                                  Case No: 12-15503
                                                                                         Honorable Victoria A. Roberts

TRAVELERS CASUALTY AND
SURETY COMPANY,

    Defendant,
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (Doc. # 32)**

**I.    INTRODUCTION**

Trelleborg Automotive USA ("Trelleborg") sues Travelers Casualty and Surety Company ("Travelers") to enforce lost insurance policies allegedly issued by Travelers' predecessor Aetna Casualty and Surety Company ("Aetna"), to Trelleborg's predecessor Yale Rubber Manufacturing Company ("Yale Rubber") and its subsidiary, Yale Rubber Manufacturing - Dawson Division ("Dawson Site") from 1961 to 1976.

The Court **GRANTS** Travelers' Motion for Summary Judgment pertaining to insurance coverage prior to 1972; but **DENIES** Travelers Motion for Summary Judgment for insurance coverage after 1972.

**II.    BACKGROUND**

Trelleborg is the successor by merger and acquisition to Yale Rubber. Yale Rubber was an automotive parts manufacturer located in Sandusky, Michigan. In 1968,

1

the Dawson Site was incorporated in the State of Michigan. Like Yale Rubber, the Dawson Site manufactured parts for the automotive industry, but it was located in Dawson, Georgia. All common stock in the Dawson Site was issued to Yale Rubber; the Dawson Site was a subsidiary of Yale Rubber. Trelleborg says from August 30, 1962 to August 30, 1976, Aetna provided comprehensive general liability insurance coverage to Yale Rubber and the Dawson Site. Of note, however, the Articles of Incorporation state that the Dawson Site was not incorporated until 1968.

Before 1986, the facility at the Dawson Site used triochloroethene ("TCE") in its manufacturing process. Unfortunately, TCE contaminated the soil and groundwater at the facility. When the Dawson Site discovered the contamination, it informed the State of Georgia. As a result, the Georgia Department of Natural Resources ("DNR") asserted a claim against the Dawson Site, requested an investigation, and the remediation of the contamination. According to Trelleborg, the Georgia DNR claim against the Dawson Site triggered coverage even though it was a wholly owned subsidiary of Yale Rubber, making Travelers obligated to pay Trelleborg for costs associated with defending and resolving the environmental contamination. Travelers refused to pay towards remediation.

Travelers says Trelleborg cannot prove: (1) Aetna insured Yale Rubber prior to 1972 because it cannot produce any proof or copies of the alleged policies; (2) Travelers insured Yale Rubber or its subsidiary the Dawson Site from 1972 to 1976; it says Aetna may have issued the policies, but they are unenforceable because Trelleborg cannot prove the material terms; or (3) Travelers ever insured the Dawson Site. Travelers says even if there are enforceable policies, they do not cover the

2

Dawson Site because the Dawson Site is a subsidiary of Yale Rubber, and the policies do not cover subsidiaries.

Trelleborg says the materials provided during discovery are sufficient to determine the existence and material terms of the policies. And, Trelleborg's expert will help the fact finder fill in any remaining gaps about material terms.

### III. STANDARD OF REVIEW

#### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) says a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, or other materials. Fed. R. Civ. P. 56. The burden is on the moving party to show that no genuine issue of material facts exist, and a court should evaluate the evidence in the light most favorable to the non-moving party. *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 412 (6th Cir. 2006).

To create a genuine issue of material fact, the non-moving party must present more than a mere scintilla of evidence in support of his position to raise some doubt as to the existence of a fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party must bring forth sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249-50.

### B.  Reconstructing Lost Insurance Policies

Trelleborg has the burden to prove by a preponderance of the evidence, the existence and terms of the missing insurance policies. *Star Oil Co. v. Aetna Cas. & Sur. Co.*, No. 93-CV-72686, 1995 WL 875597, at *3 (E.D. Mich. June 14, 1995). In the absence of bad faith, circumstantial and secondary evidence may be used to prove the contents of the policies. *Id.* ; *Century Indem. Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670, 680 (W.D. Mich. 2003).

Secondary evidence may include documentary evidence, such as binders and declaration pages, testimony from insurance agents or brokers responsible for obtaining insurance for the insured, testimony from representatives of the insurer, insurance policy reconstruction experts, and standard policy forms in use by the insurer during the relevant period. *Century*, 254 F. Supp. 2d at 680.

As the Sixth Circuit noted, the party relying on secondary evidence to prove the terms and existence of an insurance contract certainly faces a formidable burden. *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1021 (6th Cir. 1995). If "no jury could find, absent sheer speculation, the scope of coverage, the relevant notice requirements, and all of the other aspects of the policy, on which coverage often hinges," the party attempting to prove coverage has failed to meet its burden. *Id.* Moreover, the insured cannot "rely on some contemporaneous version of the policy that it has secured from other parties, or from [the insurers], absent some clear link, such as there being only one version of the policy, direct testimony linking the sample policy to the one issued, or solely cosmetic differences between versions." *Id.*

4

## III. DISCUSSION

### A. Pre-1972 Insurance Policies

Trelleborg says from 1962 to 1976, Aetna insured Yale Rubber and its subsidiary the Dawson Site. For proof, Trelleborg relies on various documents. First, it points to a letter from 1974 written by Norma Greswell, senior underwriter of Aetna's Commercial Casualty Division in Detroit, that says "we have written the general liability coverage on this account since at least 1962 with no losses." (Doc. # 35 TR_UW000004).

Second, Trelleborg relies upon documents uncovered from Willis Claims Service Center which identifies policy numbers for years 1962 to 1965 and 1970 to 1972. However, Willis has no records of policy numbers for years 1965 to 1970.

Third, Trelleborg relies on the expert opinion of Robert Hughes. Hughes is an insurance consultant with experience reconstructing the terms of lost insurance policies. Hughes says Aetna provided coverage to Yale Rubber, although it is unclear whether his observations and conclusions apply to the Dawson Site. For his conclusions, Hughes relies upon Aetna's internal documents, and the standard forms Aetna submitted to insurance organizations, such as the National Bureau of Underwriters ("NBCU"). The NBCU collected and compiled standard forms for primary Comprehensive General Liability ("CGL") policies on behalf of its members. Insurance companies would use these standard forms as templates for their policies. Thus, in lost insurance policy cases, entities that want to prove the terms of coverage use these standard forms for guidance. *See, Harrow*, 64 F.3d at 1021.

Hughes says Aetna was a member of the NBCU, so one can look to the standard forms filed on its behalf with the NBCU. During the relevant period, the NBCU filed CGL

5

forms in 1955, 1966, and 1973. Therefore, Hughes says from 1962 to 1970, Aetna provided coverage to Yale Rubber based on the standard form Aetna submitted to the NBCU. And, more likely than not, Aetna provided coverage to Yale Rubber on an "occurrence basis" rather than a "caused by accident" basis. He bases this conclusion on industry practice during that time.

Finally, Hughes relies on a letter from Philip Rosi on behalf of Yale Rubber. Unfortunately, this letter was not submitted to the Court; therefore, the Court is aware of its contents from Hughes' report. According to Hughes, The letter was written in 1988 and concerns an insurance settlement proposal for an earlier environmental incident. The Rosi letter allegedly identifies coverage from Aetna from 1961 to 1976. It lists policy numbers for years 1961, 1962, 1963, and 1970 through 1975. The letter says "the limits of liability are $250,000/$100,000," which Hughes says represents Bodily Injury Coverage, and "$300,000/$100,000," which Hughes says represents the limit for Property Damage Liability.

The Court finds that Trelleborg failed to sustain its burden to establish the material terms of coverage for years prior to 1972. Similar to the trial judge in *Star Steel Supply Co. v. U.S. Fidelity and Gaur. Co.*, 188 Mich.App. 475, 481 (1990), the Court is "pretty convinced" there was coverage of some sort, but establishing coverage is only one part of Trelleborg's burden. The main question is which entity was covered under these policies - Yale Rubber or Yale Rubber and the Dawson Site. The documents Trelleborg relies upon do not answer this pivotal question.

Greswell's statement only suggests coverage. The list of policy numbers from the Willis Claims Service document for years 1962 to 1965 and 1970 to 1975 suggests

6

coverage, but does not show what entity was covered. Similarly, the Rosi letter, which was not submitted to the Court, allegedly identifies the amount of coverage, but fails to shed light as to which entity was covered under the policy. Moreover, it is unclear if evidence of insurance policies for years prior to 1968 - the year the Dawson Site was incorporated - is relevant because the Dawson Site was not yet incorporated.

As far as terms, Hughes says that "more likely than not" Aetna provided coverage to Yale Rubber based on a standard form. He bases this conclusion on Aetna's membership in NBCU. It is unclear whether Aetna only provided CGL coverage based on standard forms, or if Aetna produced multiple standard forms for CGL coverage. Thus, Hughes did not establish the clear link between the form he allegedly based his opinion on, and Aetna's practices as required by *Harrow.*

In addition, for years 1968 to 1970, Trelleborg does not provide any corroborating evidence for Hughes' conclusions. The only support for the conclusion that Aetna provided coverage to the Dawson Site is Hughes' opinion. Summary judgment for years prior to 1972 is appropriate.

### B.   Post-1972 Insurance Policies

As proof that Aetna provided coverage to Yale Rubber and the Dawson Site, Trelleborg offers four partial copies of insurance policies providing coverage from 1972 to 1976, and other documents. Each policy includes a policy number, the dates of coverage, and premium amount. The policy is classified as "Comprehensive General Liability Insurance," and it identifies policy limits of $300,000 for Bodily Injury Liability, and $100,000 for Property Damage Liability Insurance.

In addition to the partial policies, Trelleborg provides internal documents from

7

Aetna which reference Yale Rubber and the Dawson Site. For instance, a 1974 "CCD Account Submission" specifically references Yale Rubber located in Sandusky, Michigan and Dawson, Georgia. There is an interoffice communication from Norma Greswell that lists Yale Rubber's amount of sales; however, in order for that number to be accurate, the amount must include the amount of sales at the Dawson Site. There is also an application for an umbrella liability policy that says "Yale Rubber Manufacturing," but it identifies Michigan and Georgia as states in which the company operates. Unfortunately, the application does not have a date, but it identifies a premium amount of $5,659.00, which is the same premium amount listed in the 1972 to 1973 CGL policy.

For the post -1972 period the Court finds that Trelleborg satisfied its burden under *Harrow*. The partial copies of the insurance policies identify the policy limits, amount of coverage, and the premiums paid. The policies also contain a list of endorsements. Although Trelleborg has not refuted "the possibility that endorsements, exclusions, or amendments narrowing coverage may have existed," the information that Trelleborg provides, "if believed at trial, might establish the material terms of the policies." *See also*, *Star Oil Co.*, 1995 WL 875597, at *5. More importantly, however, the supporting documents suggests that Yale Rubber and the Dawson Site were covered under these policies. Summary judgment is inappropriate for the post - 1972 period.

## IV.  CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment for insurance coverage for years prior to 1972; but, **DENIES** the Motion for insurance coverage after 1972.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  February 3, 2015

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 3, 2015.
>
> s/Linda Vertriest
> Deputy Clerk